Majewski This appeal had to do with an amended motion to vacate a corrected judgment of disillusion under Section 2-1401 of the Code of Civil Procedure, and it challenged basically two things. The first was regarding the valuation of some farm equipment that the parties owned during the marriage, and the second thing was an assessment or a finding of indirect civil contempt and the associated assessment of temporary maintenance in a rearage attorney's costs associated with that as well. First, with regard to the valuation, the focus of the valuation and the focus of the amended motion to vacate was on Petitioner's Exhibit 14. It's in the record, and that was a list of the farm equipment and its attendant values that were placed there, and when you look at that, just at those values and do the math, it was $92,600. But someone, and I don't think the record tells us that from my recollection, someone had written $161,000. So the difference there was over $68,000 in valuation of that equipment. Now, interestingly enough, the trial court noted this in its memorandum of judgment that it had issued before the corrected judgment was actually entered, noting this when you look at the valuation, it appears to be $92,600, but there also appears this $161,000 entry, and so the court nevertheless assesses the valuation of that farm equipment at $161,000. Further, interestingly enough, the trial court observed that Mr. Majeski during the trial, when he was representing himself at that time, didn't offer any evidence of any alternate valuation, and so the trial court stays with that $161,000 assessment. Then, later in the memorandum of judgment and ultimately in the corrected judgment for disillusioned marriage that was entered, the farm equipment at that $161,000 valuation was awarded to Mr. Majeski, and ultimately that then affected the distribution of proceeds from the sale of marital property that later took place that was approved by the court about a month later by an order entered in May of 2016. So, let me ask you those. I'm going to ask those in counsel the same question. The trial court figured out that there was an error in this valuation, yet the trial court adopted the figure that it had determined was an error. Anything in the record or any circumstance or anything explaining why the trial court took that action? No, there really isn't anything in the record. Mr. Majeski was asked with regard to the entry or the admission of that exhibit as a whole, and his response was, I don't agree with the valuation, and I suggested to the court he didn't have to, because all he had to do was look at the math. It's $92,600, not $161,000, of which the court was aware. So, it really is bewildering to me, frankly, that the trial court would assess that $161,000 value. What if it had been $250,000 written there or any other larger number? Would the court be warranted in awarding or assessing that kind of valuation? I suggest no, not at all. And so that's the first element of our motion to vacate, and that is it's just a clear error on the record. So, to answer your question, no, there's not any explanation that I can see from the record as to why that assessment of that value was applied. So, in terms of the temporary maintenance issue, the focus of that was an order that ordered Mr. Majeski to pay $1,500 a month for the months of June, July, and August, and then $1,000 a month for the months of September through May. And the only reference that he dates for the payment was a retroactive application to May 14th of 2014, and then nothing else. No, it will continue until further order. It will terminate at this point. It just said nothing about it. And then in the corrected judgment for disillusion of marriage, Mr. Majeski was found to be in indirect civil contempt for having failed to pay certain amounts of maintenance that he was deemed to have been ordered to pay. He was assessed to turning speed and so forth, and that all amounted to about $9,300. So that also, then, was incorporated into the assessment to him in combination with the valuation of the farm equipment when it ultimately came to the distribution of the proceeds from the sale of some marital property that took place after the corrected judgment was entered. So all told, we're talking about nearly $78,000 assessed to Mr. Majeski that he suggests to the court wasn't proper at all, which would, of course, we suggest ultimately ended up in him having a greater award of the marital proceeds from the sale of the marital assets that later took place. Thus, the 2-1401 motion, the one-way west case that I've cited that this court has decided, says that this type of motion is for this purpose, to challenge incorrect errors that appear on the face of the record on which the judgment was based. And, of course, the cases indicate that Mr. Majeski must show that he had a meritorious claim or that he asserted facts that existed in the record that would have prevented the judgment from being entered in the first place. He's also got to show due diligence in presenting this before the judgment was entered, and he has to show diligence in presenting it after the judgment was entered. We're looking at the first factor, of course, the facts concerning the issue he raised are of record, and he presented those. We have Petitioner's Exhibit 14, which in black and white indicates what those values were. We have the July 2014 order with regard to the temporary maintenance that exists of record. So I suggest that the first factor about the meritorious claim or the facts that exist, they're in the record. Secondly, with regard to due diligence before the judgment was entered, Kenneth had objected to the valuation that was assessed. We talked about that just a moment ago. And nevertheless, the trial court responded that it was going to enter that exhibit into evidence and then ultimately assess the $161,000 valuation. You know, the court had said, well, Mr. Majeski didn't offer any other evidence as to the valuation. Again, I suggest he didn't have to. It was right there in black and white. Then with regard to the order itself, he raised that issue in his own pro se way when he filed something called a clarification of order, which was about a month and a half before the trial had taken place, in which he was asking the court, Judge, what am I supposed to pay when and how much and how long? When does this end? And there was no ruling on that, ever provided. So the bottom line is that Mr. Majeski, I suggest, exercised his due diligence in presenting this evidence before the corrective judgment had been entered. Counsel, how long after the judgment was entered was the motion filed? The judgment was entered on, I think I told you, April 29, 2016. There was then another order that had been entered in May of 2016, which had to do with the distribution of the proceeds of the sale of the Merrill assets. And the motion, the amended motion we're talking about, was filed, I believe, in March of 2017. If I have my dates wrong, I may be wrong on that. But there was a period of time that had passed from the point at which the corrective judgment was entered and the point at which the amended motion was filed. And I recognize that issue. That is an issue with regard to the diligence. But the point I want to make about that is that Mr. Majeski made factual allegations about his diligence in bringing the motion. That was denied in the response that was filed. And the case law from this Court and the Supreme Court says that if the factual allegations regarding the due diligence are at issue and raised by the response to the motion itself, then the petitioner is granted, should be granted, a full and fair evidentiary hearing to present his evidence to prove by a preponderance of the evidence that he has presented on the motion. And we had a docket entry that said the motion is denied. So, at the very least, he wasn't given the evidentiary hearing opportunity to present his evidence with regard to his diligence. There was some issue raised in the respective briefs about the standard of review that this Court should apply. I had initially in the first brief indicated that the one less case that this Court had decided, that that standard is de novo. Counsel had raised in his reply brief that, oh no, it's abuse of discretion. When I kind of chased that rabbit a little bit, it appears that it landed at the Warren County soil case that I've cited in the reply brief that sort of makes a distinction between types of motions that are filed. If it's a abuse of discretion basis, and if it is more of a legal issue, tagging the validity of the order that's entered in the first place, then the de novo standard would be applied. I can see this is a factual issue case, so the abuse of discretion applies. But under either standard that might be applied here, because we have a factual allegation in the motion, and we have a dispute of that factual allegation, the law is clear that my client should have been given an opportunity for a full and fair evidentiary hearing to prove by a preponderance of the evidence his assertion. So, and again, either standard that you apply, in particular looking at the valuation of the farm equipment under abuse of discretion standard when we talk about reasonable person could come to the same reasons the trial court came to, I think that certainly applies here. How could a reasonable person apply an assessment of value to the equipment when all you do is put pencil to paper and add it up and you have a $92,600 valuation, yet the trial court for whatever reason, unexplained in the record, assesses it at $161,000. So I think that's clearly an abuse of discretion there. I think it's an abuse of discretion not to grant Mr. Majeski the full evidentiary hearing. And also the Aaron case that was cited in the briefs, the Supreme Court case, and I believe also the Warren County soil case, speak in terms of principles of justice and good conscience when it comes to the assessing of the due diligence. And when you've got the potential of an unfair or unjust or unconscionable result, then the court has its discretion to apply the principles of good conscience to say, well, hold on here, we don't want to have this incredibly unfair result to stand, even though there might not be that due diligence that would otherwise be required, we're going to apply some equitable principles here and allow the person who has challenged this unfair and unconscionable judgment to have his day in court. And that's what we're asserting here. And really that's nothing more than what the Warren County soil case did when they were confronted with an evidentiary issue about that. They remained in the case for a full evidentiary hearing. And so that's what we're asking here in this case. As to those two issues, at a very minimum, we're asking for a full fair hearing. But we have asked for the judgment as it relates to the valuation of the equipment and as it relates to the assessment of the temporary maintenance, for rearage and attorney's fees and so forth, we're asking those parts to be actually vacated. But if the court's not inclined to do that, we'd ask for their ability to appear before the court and present our evidence on the motion itself. Thank you. Thank you, counsel. May it please the court. Counsel, my name is Jerry Reed. I'm with the law firm of Reed, Heller, Mansfield and Gross in Murfreesboro. I represent the plaintiff, Apple Lee, Debbie Majewski. As counsel has pointed out, we're in agreement that abuse of discretion is the proper standard. We're also in agreement that any factual dispute must be proved by preponderance of the evidence. We're also in agreement that there's no question that there are factual disputes created by the pleadings. The most significant is the allegation set forth in paragraph 15 of the amended 2-1401 motion that alleges that there was diligence in filing. We denied that. There was no evidence offered. Counsel has I think there's any question that someone filing this pleading should be entitled to a full evidentiary hearing. I guess the difference of opinion we have on that is at the time the amended motion was filed, notice of hearing was filed with it. This matter was scheduled for hearing on May 19, 2017. Counsel appeared with clients. The case was called. No evidence was offered. Argument was made and the motion was denied. So the fundamental threshold of this full hearing that counsel represents and says they're entitled to, we don't disagree. But we don't know that they're entitled to two different ones. This is the one that he said he noticed that we appeared with counsel and no evidence was offered. Counsel. Yes, sir. Let me ask you the same question I asked her. Yes, sir. When when the trial court determined that there was an error in this valuation, numbers literally did not add up. Yes, sir. The court decided to use figures it had determined were incorrect. Anything in the record indicate why the court, how the court came to that conclusion? I don't believe I was trial counsel, Your Honor, though I'm not counsel of record until recently on the appeal. I don't recall anything that would be in the record that would state how the court determined that. But I would make a couple of comments if I might, Your Honor. First of all, Plaintiff's Exhibit 14 is not simply the machinery schedule that we're looking at. The first page of Petitioner's Exhibit 14 is a financial statement that was prepared by and signed by the defendant, Kenneth Majewski, to get a loan. And it's to that application he has If we stop our discussion there, the trial court had to draw one of two conclusions. Either the total is erroneous and the valuation of the equipment is correct, or the listing of the values on the equipment is erroneous and the total is correct. The court knew at trial that, and it took into consideration a loan in excess of $23,000 that was owed in relation to the farm equipment, and it was owed in relationship to a combine. Your Honor, if I'm not mistaken, the only combine listed on Petitioner's Exhibit 14 shows a value of $7,600, which is significantly less than the loan. Subsequent to the court ruling, defendant filed a motion to reopen the evidence. Filed on February 22, 2016. Attached to that motion are two equipment lists, one of which was one he had prepared that stated 216-16. The other one is a handwritten list that is identical in most respects to the nice handwritten list that's attached to our Exhibit 14. In the second handwritten list attached, the same equipment is listed in the same order as on our Exhibit in court. The big difference is that the combine on this is shown at $76,000. The combine on Plain Disk Exhibit 14 is shown at $7,600. With the luxury of having this filed after, it becomes a little bit more apparent where the error was. To answer your question, Your Honor, there was nothing more in the record except the court perhaps looked at what the financial affidavit was and what was attached in its purpose, and perhaps the court assumed that someone would have a reasonable evaluation of his farm equipment and is not going to make a $70,000 error in valuing it and applying for a loan. But to answer the court's question, there's nothing except the court did specifically point out the problem. Only I hadn't seen it, and the defendant hadn't either. And I think the court specifically pointed that out in its memorandum ruling of October 30, 2015 to give an opportunity to the defendant to do something about it if he felt appropriate. And as indicated, he filed well over a year later in the spring of 2017. Our position is as a preliminary, the court at trial level was in no position to grant this motion because the defendant offered no evidence on due diligence in presenting it, which was denied in our answer and which was a required element to be successful and required to be proven by a preponderance of the evidence. But I think if we don't have that as controlling, the maintenance question. The temporary order entered on maintenance had a different schedule for the summer months than the fall months because my client was employed as a secretary in a school district. So she got paid for nine months and didn't get paid for three months. The support was higher during the summer months. There was no end date in the temporary order, as there commonly isn't, because temporary orders run until the court enters the final judgment. In August of 2015, he filed this motion for clarification. We tried the case in September, the following month. In October, two months later, the court entered its ruling. And I would point to this quote, C-203 of the record is the memorandum dealing with this. And the trial court said, and I'll quote, On August 3, 2015, defendant filed a pro se pleading entitled Clarification of Order requesting the court to clarify the temporary maintenance order of July 22, 2014. On the same page of its memorandum, the court went on to say, On September 23, 2015, plaintiff and her attorney appeared at trial on all pending issues. Well, the court has just recited what pleadings were pending, and now it's made a clear statement that it's making a decision on all of them. That standing alone, I think, would be dispositive of this. But beyond that, the court went on to rule that the defendant is in contempt of court for not paying maintenance in August and September of 2015. The very two months his motion to clarify addressed, he gave no explanation for nonpayment. And he was found in contempt. He was ordered to pay attorney fees. I don't know how moral direct the court could have ruled on that motion, nor been clear what its ruling was. And where I'm going with this is the 30 days on this maintenance question should have started 30 days after the judgment was entered. It was clearly ruled on by the trial court. The file equipment issue, I believe, number one, as I said, the court had to make a decision in looking at it on whether the total was wrong or whether one of the pieces of equipment was perhaps written down with the wrong value. The court went with the total being correct. It pointed that out in its memorandum of October 30th. And to me, the question of diligence in pursuing that on the part of the defendant started at that time when the trial court made its ruling and pointed the error out. It would take a pretty strong set of facts, I believe, to show due diligence in filing nothing well over a year later to something pointed out by the court in its ruling. But again, Your Honor, in this case, we have no evidence of any due diligence. We had a factual issue created by the pleadings and no evidence to support it. It's our position, first of all, that there's no evidence in the record to support due diligence in pursuing this, and the trial court's hands were literally tied, even if it felt otherwise, because of that void in the evidence. Secondly, it's our position that the trial court clearly ruled on this request for clarification. It recited it in the memorandum. It said it was ruling on all issues, and by the very ruling it addressed the issues that were created by that pleading. Finally, in terms of the farm equipment, the court had two options. It could determine that the total was correct and the equipment had an error or it could determine there was an error in the equipment and the total was wrong. Perhaps the court felt that because this was attached to a loan application by the defendant that he would have been sure on the total and been sure what he put down. Your Honor, I can't answer what the trial court did, but as a reasonable person it had to do one or the other at that point, and it felt that the total was more accurate or had a higher probability of being accurate, I guess, than a piece of equipment. And the only thing I can tell the court that could have factored into it at that time was the combine loan was three times more than what the value was shown on that equipment list, and so the court could easily have concluded that perhaps a number was bad as opposed to the total. We ask that the trial court decision be affirmed. Thank you. Thank you, counsel. Counsel? Your Honor, first with regard to the assertion that no evidence was offered at the hearing, frankly, there was no opportunity for evidence to be offered. The trial court never made any assertion that it would take evidence. All we heard was argument of counsel entered its docket entry that the motion was denied. No opportunity to present evidence that was afforded at all, and that's the issue. That's one of the reasons we're here before you today is for you to instruct the trial court that, in fact, it should have given us the opportunity to present the evidence. That's the first thing. Second, if I didn't, I don't know if I misheard the counsel, but he may have indicated that he, being my client, had asserted the $161,000 value. That's not the case. We don't have any evidence from the record to suggest who might have written in the $161,000 figure. It certainly wasn't my client because he's asserting that the values are reflected in the list of the equipment that told the $92,600, not the $161,000. And we don't know who wrote that. And what is worse is we don't know why the trial court would have taken that number over those things that simple math would have reflected to be the $92,000 figure. Do you contest the opposing counsel's position that the figure was in the loan application? Whatever the exhibit presents in Petitioner's Exhibit 14, that's what we have. If you're talking about the exhibit that reflects Petitioner's Exhibit 14? Yes, that appears to be what would be something that would be submitted for a loan application. Yes, that's what it appears to be. And as it relates to the motion to reopen the evidence, that was something that Mr. Majeski had presented, again, pro se, after the trial, but actually before the corrected judgment had been entered in which he tried to present evidence of an evaluation, an appraisal, that the trial court, frankly, rightfully rejected. But that's a different issue than what we're raising here in the motion to vacate in that the trial court had a clear error in its assessment of the valuation, which, again, ultimately affected the distribution of the proceeds that were awarded to the parties once the Merrill property was sold. This was some Merrill real estate that was sold. In the loan application, was the value listed at $76,000? Frankly, I don't know. I don't recall that. I know that in the Petitioner's Exhibit 14 that was presented, which, again, was Petitioner's Exhibit, the value was the $7,600, and then the total was the $9,206. I don't know if I've answered your question. I don't think I know the answer to that, frankly. I know that the idea was put forth that, well, perhaps it was an error, and instead of $7,600 as the value listed on the exhibit, it was really $76,000, and that would explain the math. Well, I don't know the answer to that one, but all I know is it was the Petitioner's Exhibit, and they relied upon that, but you can't rely on the math and say, oh, well, that had to be a mistake, and take the 161. You have to take what appears there. You can't just take the 161 that was handwritten in when the numbers themselves for those valuations total something completely different. So I don't know the answer to that original question that you asked. And with regard to the memorandum of judgment and the recitation of the pleadings and that all issues were presented to the court, the fact of the matter is there was no ruling on that clarification motion that my client had filed pro se. There simply wasn't any ruling in that regard, and he had asked for a ruling, didn't get it, and then is ultimately assessed with nearly $10,000 in arrearages, attorney's fees, and so forth, which ultimately was held against him in terms of the distribution of the proceeds later. So that's the basis for our motion, and we think that we ought to have the opportunity to either have that corrective judgment vacated with regard to those findings or allow us the evidentiary hearing to present our evidence in that regard. Thank you. Thank you, counsel. We appreciate the briefs and arguments of counsel. We'll take the case under advisement issue of ruling in due course.